# Alabama Consolidated C. &. I. Co. v. Vines.

*Damages for Pollution of Stream.*

(Decided June 13, 1907. 44 South. 377.)

1. *Waters and Water Courses; Pollution; Damages; Evidence.*— Although a plaintiff is only entitled to recover for damages occurring within twelve months prior to the commencement of his action, evidence as to the kind of crop made by plaintiff subsequent to the commencement of the action was admissible for the purpose of showing the effect of the deposit of coal dust and other foreign substances through overflow of the stream upon plaintiff's land.

2. *Same; Measure of Damages.*—The damages for injuries caused by the deposit of coal dust and other foreign matters on the land caused by the overflow of the stream in which they were deposited, includes loss of crops already sustained as well as permanent injury to the land, although loss of crops cannot be added to permanent damages as such.

3. *Trial; Instructions Misleading.*—A charge asserting that the law takes into consideration the fact that the use by mining companies of streams will result·in some impairment of the quality of water and that if the use by defendant did not of itself greatly impair the quality of the water, the jury must find for the plaintiff, is argumentative and misleading, and properly refused.

4. *Same.*—A charge limiting damages to that which had occurred during the year preceding the commencement of the action was properly refused as misleading, where there were separate actions

against several defendants commenced at different times which were consolidated and tried together, notwithstanding the owner of the land alleged to have been damaged by the deposit of coal dust and other foreign matter is limited by statute to damages occurring within a year prior to a commencement of his suit.

5. *Waters and Water Courses; Pollution; Mining Operation; Rights of Riparian Owner.*—Although mining companies may use a stream for mining purposes they cannot place in such stream anything which will materially pollute the same where it passes a lower riparian owners land, or the deposit of which during an overflow will injure the same.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by Greenberry Vines against the Alabama Consolidated Coal & Iron Company and others. The actions were consolidated and tried together. From a judgment for plaintiff, defendants appeal. Affirmed.

Appellee sued appellants separately for damages resulting from the pollution of a stream and the deposits therefrom of coal dust, ore washings, and muck deposited upon the lands, together with the loss of crops for the year previous occasioned by these deposits, which deposits are alleged to have been placed in the stream by the different defendants. The facts of the case and the character of the agreement entered into as to the trials of these causes are sufficiently stated in the opinion of the court.

The following charges were requested by the plaintiff and given by the court:

"(1) The court charges the jury that, while the defendants have the right to use the stream or tributaries thereof above plaintiff's land for mining purposes, they have no right to place in said stream anything that would be carried down said stream to where it passes plaintiff's land which will materially pollute the same or may materially deteriorate its quality where it passes plaintiff's land.

"(2) The court charges you, gentlemen of the jury,

that, while the defendants have the right to use the stream or tributaries thereof above plaintiff's land for mining purposes, they have no right to place in said stream anything that would be carried down said stream to where it passes plaintiff's land which will materially pollute the stream or materially deteriorate the quality of the water where it passes along the land of the plaintiff; and they have no right to place in said stream above the lands of plaintiff any substance that would be carried down said stream and caused to be deposited upon the lands of plaintiff that would injure or deteriorate the lands of plaintiff."

The defendants requested the following charges in writing, which were refused:

"(10) I charge you that, if you believe from the evidence that plaintiff has not planted in any year until after the overflows had subsided from his land, you cannot award the plaintiff as damages any sum representing the value of crops which he failed to grow on account of harmful deposits placed on said land by such overflow, and also award him damages to compensate for the decline in the market value of his lands on account of the said harmful deposits."

"(19) I charge you, gentlemen of the jury, that the law takes into consideration the fact that the use by mining and manufacturing companies of the waters of the streams on which their industries are located in the operation of such industry will of necessity result in some impairment of the quality of such waters, and will result in some inconvenience and injury to the proprietors of the land on such streams below such industries, and that, if you believe from the evidence that the use by defendant of the streams on which their plants are situated has by itself not greatly impaired the quality of the water, you must find for defendant."

[Alabama Consolidated C. & I. Co. v. Vines.]

"(25) If the jury find from the evidence that none of plaintiff's land received any permanent injury, and if the jury find for the plaintiff, the plaintiff would be entitled to recover the amount which the jury find from the evidence would reasonably compensate him for the diminished enjoyment of the occupancy of his lands described in the complaint, and if the jury find there has been any, from the evidence, which he has suffered during the year preceding the commencement of the suit, from such wrongs as the jury find from the evidence were committed by the defendant."

"(30) If the jury believe from the evidence that the plaintiff's land described in the complaint suffered no permanent injury from defendant's acts, and if the jury further believe from the evidence that the plaintiff was entitled to recover, then the plaintiff would only be entitled to recover such amount as would reasonably compensate the plaintiff for such impairment in the enjoyment of his premises described in the complaint as he suffered from defendant's wrong doing during the year preceding the commencement of the suit."

There was judgment for plaintiff, and defendants appeal.

PERCY & BENNERS, and TILLMAN, GRUBB, BRADLEY & MORROW, for appellants.—Plaintiff was not entitled to recovery for permanent injury to his land and also for the loss of crops he would have made but for the permanent injury.—*Tutwiler C. C. L. & Co. v. Nichols,* 39 South. 762; *H. A. & B. R. R. Co. v. Matthews,* 89 Ala. 30; *Chicago v. Huenerbein,* 85 Ill. 594; *Hartshorn v. Chaddock,* 17 L. R. A. 426 and note. Where the pollution results from the operation of useful industry and such pollution does not greatly impair the quality of the water, there is no liability.—*Tenn. C. I. & R. R. Co. v.*

26 R

[Alabama Consolidated C. & I. Co. v. Vines.]

*Hamilton,* 100 Ala. 260.   The court erred in refusing to give charges 25 and 30.—*City of Eufaula v. Simmons,* 86 Ala. 518; *Tenn. C. I. & R. R. Co. v. Hamilton, supra.*

FRANK S. WHITE & SONS, and GEORGE BONDURANT, for appellee.—The court properly permitted evidence of the kind of crosp made in 1905.—*Tutwiler v. Nichols,* 39 South. 762; *C. & G. R. R. Co. v. Windham,* 126 Ala. 562; *Polly v. McCaw,* 37 Ala. 20; *Stein v. Burden,* 24 Ala. 130.   Charge 10 was properly refused.   The right to recover for the loss or destruction of his crop proximately resulting from the maintenance of a continuing nuisance has always been permitted.—*Robb v. Carnegie,* 145 Pa. 324; 4 Sutherland on Damages, § 1049; 3 Farnham on Waters and Water Rights, p. 1871; 4 Id. pp. 2643 and 2644.   Damages for permanent injury to the land are recoverable.—*Drake v. Lady Ensley Coal Co.,* 102 Ala. 501.   Charges 25 and 30 were properly refused. —*Taylor v. The State,* 48 Ala. 157; *Tutwiler v. Nichols,* 39 South. 764; 77 Ia. 50; Id. 576; 155 Ind. 576; 80 Tex. 362; 108 U. S. 317.   Plaintiff was entitled to recover interest on damages.—*Ga. P. R. R. Co. v. Fullerton,* 79 Ala. 298; *A. G. S. R. R. Co. v. McAlpine,* 75 Ala. 113; *Borden v. Bradshaw,* 68 Ala. 362.   Plaintiff had the right to recover for the decreased market value of his premises caused by the acts of defendant whether the damages were permanent or otherwise.—Authorities supra.

HARALSON, J.—The evidence of the plaintiff tended to establish the averments of the complaint—that as a result of the deposits of coal dust and other foreign matter on the land, coming from above, where defendants' washers were located, the land was rendered less productive and the yield of the crops on that ac-

[Alabama Consolidated C. & I. Co. v. Vines.]

count had fallen off. That for defendants tended to show, that there was no appreciable coal dust left on plaintiff's lands, and that there were no deposits of muck thereon, which were not of a character found on other branches of the Little Warrior river, on which no coal washers were located.

The original suits were instituted separately against several defendants, either on the 12th of November, 1903, or on June 7th 1904; and on the 1st of November, 1905, an amendment by way of substitution of the same for the original complaint was filed. On that day, an agreement was entered into by the plaintiff's counsel, and the counsel for the other defendants, that said suits be consolidated, and tried on October 30th, at which time the case against the Tennessee Coal, Iron & Railroad Company was set for trial, and the other cases were continued till that date. The case against the Republic Iron & Steel Company was discontinued. The case against the said Tennessee Coal, Iron & Railroad Company was tried, and judgments were rendered against defendants for $400, from which judgments all of said defendants appeal.

The plaintiff had testified to the deposits on the overflowed lands, consisting of coal dust, muck, etc., and the effect of the same on the lands in cultivation, rendering them unproductive; the amount of land he had in cultivation, and the crops grown thereon; what they would make before they were affected by such deposits, and that, in the year 1902, and in 1903, he made only a half of crop on them, etc.

We consider only such errors as are assigned, and such as are insisted on in argument by defendant's counsel.

When the plaintiff was being examined, his counsel asked him, "What kind of a crop did you make in the

year, 1905?" which was objected to, as calling for incompetent and immaterial evidence, which objection was overruled, and he answered, that he made the half of a crop in that year—making in all 125 bushels of corn, besides some oats.

There was no error in allowing the question and its answer. In *Tutwiler C., C. & I. Co. v. Nichols*, (Ala.) 39 South. 763—a case similar to the one in hand, and decisive of the main features of this one—it was said: "The plaintiff could recover for only such damages as he suffered within 12 months prior (to the date of the commencement of the suit); but evidence of the condition of the streams prior to the 12 months period, and subsequent to the commencement of the suit, was relevant and competent, for the purpose of showing the effect of the deposits, if any, on the land and in the river."

Again it was said, in *Central of Ga. Ry. Co. v. Windham*, 126 Ala. 560, 28 South. 395: "Actual damages were allowable only for injuries sustained before the commencement of the suit, but it was not error to allow evidence of continuing consequences by way of informing the jury of the original extent and character of the overflow." To the same effect are *Polly v. McCall*, 37 Ala. 21, and *S. & N. A. R. Co. v. McLendon*, 63 Ala. 273.

It is insisted that charge 10 for defendants was improperly refused. It is argued that this charge is substantially the same as charge 4 in the *Nichols Case*, 39 South. 762. The charge there, numbered 4, was: "I charge you, gentlemen of the jury, that if you believe from the evidence, that the injury to plaintiff's lands is permanent, there can be no recovery by plaintiff, so far as his lands are concerned, for the loss of crops, but only for the permanent injury to his lands." That charge does not assert that damages for injury to or loss of crops already sustained and proximately resulting from

a continuing nuisance cannot be recovered, but asserts, that damages to or loss of crops cannot be added to permanent damages as such. The right to recover for loss and destruction of crops resulting from the maintenance of a continuing nuisance, has not been denied.—4 Suth. on Dam. § 1049. Conceding the correctness of said charge 4, as applied to the facts of that case, it is not the same as charge 10 in this case.

In this case damages for injuries to and destruction of crops were claimed as such in the complaint, independently of any claim for permanent damages to the land.

In the case referred to it was said: "The evidence did not tend to show that the plaintiff lost any crop or crops by the deposits or overflow, but its tendency was, to show that by the deposits and overflow, the land was rendered less fertile and productive, so that the yield was diminished." In this case the proof showed that there was a loss of at least one-half of the crops for two years caused by the deposits cast on plaintiff's lands by defendant.

Mr. Sutherland says (section 1042) : "When a wrongful act is done which produces an injury which is not only immediate, but from its nature must necessarily continue to produce loss independently of any subsequent wrongful act, then all the damages resulting, both before and after the commencement of the suit, may be recovered in one action. * * * Compensation for the diminished enjoyment of the property is not compensation for the diminished value of the property itself. The profits of the land must not be confounded with the land itself."

In section 1047, the author adds: "Damages may be recovered in the same action for injury of a temporary character, and for that of a permanent character."

As is well said in brief for appellee: "The result of appellant's contention is, that if plaintiff is allowed to recover for damages to his crop, he must be denied the right to recover the much greater damage, namely, the damage to the market·value, or for permanent injury to the land. ·This would deny to plaintiff the right to recover for the greater injury because he recovered for a smaller one."

Charge 19 is argumentative and misleading. What is meant by the words, "has not greatly impaired the quality of the water," is not apparent or easily understood. How "greatly," or less so, the quality of the water had to be impaired, to render the defendants guilty, is not stated but uncertain and left open by the charge.

Charges 25 and 30 were also misleading and confusing, without further explanation of their meaning. They both limit plaintiff's compensation for damages for the diminished enjoyment of the occupancy of his lands, which he has suffered, "during the year preceding the commencement of the suit." Two of the suits—the one against the Alabama Consolidated Coal & Iron Company, and the one against the Sloss-Sheffield Steel & Iron Company—were instituted on the 12th of November, 1903; and two—the ones against the Tutwiler Coal, Coke & Iron Company and the Tennessee Coal, Iron & Railroad Company—were instituted on the 7th of June, 1904. These companies were not jointly sued, nor were they jointly liable. Each was charged with its own separate wrongs and their acts were separate and distinct, though by consent the suits were consolidated and tried together. The plaintiff had the right to recover, if any one of the defendants were guilty of wrongs charged in the complaint; but they were limited in the charges to the assessment of damages for the year preceding the

commencement of the suit. It is not stated which one of the suits is referred to. It did not embrace all of them, and could not do so, since plaintiff could recover for damages accruing one year prior to the 7th of June, 1904, in two of them, and for a year prior to the 12th of November, 1903, in the other two. The charges were properly refused.

We have been unable to discover any vice in the two charges given for the plaintiff, and defendants fail to point out any.

Affirmed.

TYSON, C. J., and DOWDELL and DENSON, JJ., concur.