[North Alabama C. I. & Ry. Co. v. Jones.]

# North Alabama C. I. & Ry. Co. *v.* Jones.

## *Action for Damages for Retaining Water.*

(Decided June 18, 1908. 47 South. 144.)

'. *Water and Watercourses.*—Subject to the right of each riparian proprietor to a reasonable use of the water for domestic and agricultural purposes, every riparian owner has an equal right to have the stream flow through his land, in its natural state without material diminution or deterioration in quality.

2. *Same.*—A riparian owner has a right to retain the water of stream by a dam, as far as is reasonable and necessary to him for rightful purposes; but he may not detain it unnecessarily or cause it to spread out so that it is lost by absorption or evaporation.

3. *Same; Complaint.*—In an action by a lower against an upper riparian proprietor, a complaint which alleges that a stream suitable for domestic and other purposes flowed through plaintiff's premises, the use of the water thereof by him for domestic purposes and for generating steam and power to operate mills and other things on his premises; that defendant erected a dam across the stream, and by means thereof used the water in an unreasonable manner and for an unreasonable time, thereby causing the water to spread out over a large territory, causing loss through evaporation, etc., to the damage of plaintiff, seeks a recovery at common law and states a cause of action good against demurrer; but such complaint does not authorize the recovery of damages imposed by way of penalty under section 3906, Code 1907, or under section 6147 thereof.

4. *Same; Improper Use of Water; Liability of Owner.*—An upper riparian owner has to show that his use of the water is proper and reasonable, and a charge is incomplete in its definition of liability, which asserts that he is liable to the lower owner for erecting and maintaining a dam if it worked injury to the lower owner and permitted an unreasonable or improper use of the water.

6. *Same.*—Where the evidence authorized inferences that the upper riparian proprietor erected a dam across the stream and maintained it at the time of the alleged injury, it is not erroneous to refuse a charge asserting that under the evidence the upper proprietor did not maintain or cause to be maintained, the dam complained of.

7. *Same; Damages.*—The lower riparian owner can recover nominal damages only for an improper and unnecessary detention of the water unless it affirmatively appears that the lower owner had suffered special damages.

8. *Same.*—Where a loss claimed by the lower owner against the upper owner for the unnecessary and improper retention of the water is only for a loss of profits from the premises, it is improper to permit proof of the rental value or actual value of the premises, especially where there was no loss of rent for the premises.

9. *Appeal and Error; Review; Motion to Strike; Claim for Damages.*—A motion to strike claim for damages as an improper claim does not present the same for review on appeal; the proper course is to object to evidence introduced touching the same, or by charges asserting that the same were not recoverable, if in fact, they are not recoverable.

APPEAL from Talladega City Court.

Heard before Hon. G. K. MILLER.

Action by A. F. Jones against the North Alabama Coal, Iron & Railway Comjany for damages for the improper retention of water in a stream. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The complaint was in the following language: "Plaintiff claims of defendant, a body corporate, for this: That the plaintiff owns and occupies, and at the time of the accrual of this action then did own, certain lands in Talladega county known as the 'Doc Jones Place.' [Here follows a description of the land.] That aforetime through said premises there flowed a stream of water known and called 'Clear Creek,' which was clear and suitable for domestic purposes, and was a source of profit, comfort, and enjoyment to the plaintiff. That at the time of the accrual of this action plaintiff was, and for a long time had been, using the waters of said Clear Creek for domestic purposes, and for generating stream to run and operate a gin, a gristmill, and a sawmill located on said premises. That said stream so flowing in and through plaintiff's said premises caused the lands along its banks to be more fertile and productive of profit, and was to him a source of comfort, convenience, and profit. That above plaintiff's premises, at or near Renfroe, Ala., and across said stream the defendant has erected a dam across said Clear creek, and by means of said dam across said creek does detain the waters of said creek in an unreasonable manner and for an unreasonable time, and

causes the waters of said creek there to form a pond and spread over a large amount of land, thereby causing the water of said Clear creek to evaporate, sink into the ground, and cease to flow down its usual and customary channel in, upon, and through plaintiff's said premises, as the same were accustomed to flow, and that thereby plaintiff had been damaged, has been made uncomfortable in his home, and put to great expense and loss of profit from his said gin, sawmill, and farm; and plaintiff avers defendant's detention of said waters of Clear creek are unlawfully, wrongful, and injurious to plaintiff, and that such wrongful act within the last 12 months before the bringing of this suit damaged the plaintiff in the sum of $1,000."

Demurrers were filed to the complaint, as follows: "(1) There is not shown to be any diversion of said water, nor any unreasonable use of the same by the said North Alabama Coal, Iron & Railway Company. (2) The fact, if it be a fact, that a dam was erected across said Clear creek, and that the waters of said creek evaporated and sank into the ground and ceased to flow below does not in any way show liability on the part of defendant to plaintiff. (3) From aught that appears in said complaint, defendant had a right to use said dam and to form a pond as therein described, and the allegation that the same was detained in an unreasonable manner and for an unreasonable time is a mere conclusion of the pleader. (4) It is not shown when said dam was erected, or when said water was detained in said dam, or whether the same has been detained and dammed within the last 12 months or not. (5) The allegation that the plaintiff has been made uncomfortable in his home is a mere conclusion of the pleader, without setting up any facts to show why he was made uncomfortable and in what manner he was made uncomfortable in his home by virtue

of the act of defendant as set forth in said complaint. (6) It is not shown in what manner the act of defendant caused the plaintiff to lose profit from his gin, sawmill, gristmill, and farm. (7) The loss of profit claimed from the gin, sawmill, gristmill, and farm is not the proper measure of damages under the wrong set forth in the complaint. (8) The allegation that the plaintiff was damaged by the act of the defendant is a mere conclusion of the pleader, and no facts are set forth in such complaint to justify such conclusion." These demurrers were overruled, and after the evidence had been introduced the plaintiff was permitted to insert, just after the words "defendant had erected," and just before the words "a dam across said creek," where they first occur in said complaint, the following words in interlineation: "Or caused to be erected or maintained, or caused to be maintained." Plaintiff was also permitted to strike from his complaint the words "and occupied as a homestead."

The oral charge of the court objected to was in the following language: "If the injuries complained of were the proximate result of damming up and obstructing the flow of the water in the creek, then did the defendant have notice of or have cause to know that the injuries complained of were being committed? If defendant was in possession of the dam and water, such possession and control would put it on notice of a proximate result of such damming or obstruction or diversion of the water, if there were any. During the time the injuries are alleged to have been committed did the defendant maintain or cause to be maintained the dam complained of, and did the maintaining or causing to be maintained of the said dam work any injury to the plaintiff, as complained of in his complaint? If it did, it would be liable to him."

The following charges were refused to the defendant: "(1) The court charges the jury that, if you believe the evidence in this cause, you must find that the defendant did not erect the dam complained of. (2) The court charges the jury that, if you believe the evidence in this case, the defendant did not cause the dam complained of to be erected. (3) The court charges the jury that, if you believe the evidence in this case, the defendant did not maintain or cause to be maintained within the 12 months just preceding the bringing of this suit the dam complained of. (4) The court charges the jury that, if you believe the evidence in this case, the defendant did not unreasonably obstruct Clear creek within the last 12 months before the bringing of this suit."

The defendant moved to strike the folliwing averments from the complaint: "Causes the water of said creek there to form a pond and spread over a large amount of land." "Thereby causing the water of said Clear creek to evaporate." "Thereby causing the waters of Clear creek to sink into the ground."

Knox, Dixon & Burr, for appellant. It is the universal rule that all the owners of land through which streams of water run have the right to use the water in a reasonable manner and for reasonable purposes, and it has always been held that the detention of water by a dam for manufacturing or other purposes is a reasonable use.—8 Am. & Eng. Enc Law (2d Ed.) pg. 700; *Holyoke v. Lyman,* 15 Wall., pg, 500; *Stein v. Burden,* 29 Ala. page 127. "A riparian owner may, by the use of a dam or otherwise, retard or divert waters of a stream, so far as necessary to fill a pond or other reservoir and to thereby store water for use as a power for a mill or for any other useful purpose, though the flow of the water to the lands of a lower proprietor is thereby

somewhat diminished, because more of the water is lost by evaporation and by soaking into the ground, than when it was left to flow without obstruction in the natural channel."—*Gehlen v. Knorr,* 63 Am. State Reports, page 416; *Palmer v. Mulligan,* 2 Amer. Dec., 273; *Bullard v. Saratoga Victory Mfg. Co.,* 77 N. Y., page 525. Request to abate a nuisance must be made to him who did not erect such a nuisance before an action can be maintained against him for continuing it, and a purchaser or a lessee is not liable for the continuance of a nuisance on the property purchased or leased until after he has been asked to remove it. *Johnson v. Lewis,* 33 Am. Dec., page 405; *Piearson v. Glean,* 25 Am. Dec., page 497; *Plumer v. Harper,* 14 Am. Dec., page 338. "A plaintiff ought not to be permitted to recover damages for injury alleged to have been done to him by the maintenance of a pre-existing condition during a period when, with full knowledge of his hurt, he made no complaint of it, nor requested the removal of its cause."—*Philadelphia & Reading R. Co. v. Smith,* 27 L. R. A., pg. 133. "The alienee of land sold subsequent to the erection of a nuisance, may maintain an action for continuing it *after a special request to remove it.*" (Italics ours). *Lofton v. McLemore,* 1 Stewart Reports, page 133. "The rule is well settled, that the declarations or conduct of one professing to act as the agent of another cannot be received as evidence against the principal without independent proof of his authority." —*Postal Tel. Co. v. Lenoir,* 107 Ala., page 643; *Singer Mfg. Co. v. McLean,* 105 Ala. page 316. Loss of profits is too remote and speculative to be considered as an item of damage, in a case of this kind.—*Moulthrop v. Hyett,* 105 Ala., pg. 493.

BROWN & McELDERRY, for appellee. The maintenance of a dam by an upper proprietor which backed up the water over a large surface causing a large amount of it to be lost by evaporation and absorption, and preventing water from flowing down its natural course to a lower proprietor is not a reasonable use of such water.— *Barntich v. Mercy*, 136 Cal. 205; 2 Farnham on Waters, secs. 478, 484; *Ferrica v. Knipe*, 87 Am. Dec. 928; *Thunder Bay R. B. Co. v. Specchley*, 18 Am. Rep. 184; *White v. East Lake Land Co.*, 51 Am. St. Rep. 142; *Tenn. C. I. & R. R .Co. v. Hamilton*, 100 Ala. 261. Every riparian owner has an equal right to have the stream flow through his land in its natural state without material diminution in quantity or alternation in quality; *Ulbricht v. Eufaula W. Co.*, 86 Ala. 591. The evidence introduced was competent on the question of damages.— *Drake v. Lady Ensley Co.*, 102 Ala. 501; *City of Eufaula v. Simmons*, 86 Ala. 515. It was not necessary to demand an abatement of a nuisance before bringing an action for damages.—*Plummer v. Harper*, 14 Am. Dec. 338, note 2.

ANDERSON, J.—The complaint, before and after amendment, does not proceed under the statute for the penalty prescribed by section 3906 of the Code of 1907, or under section 6147 for diverting the stream from its natural channel, but seeks a recovery under the common law for the improper and unnecessary retention of the water, so as to cause it to spread out into a pond and evaporate, to the extent of depriving the plaintiff (a lower owner) of the benefit of water that would naturally flow to or beyond his mill, but for such interference on the part of the defendant. The law is well settled, here and in England, that every riparian proprietor has an equal right to have the stream flow through his lands

[North Alabama C. I. & Ry. Co. v. Jones.]

in its natural state, without material diminution in quantity or alteration in quality. But this rule is qualified by the limitation, now well recognized, that each of said proprietors are entitled to a reasonable use of the water for domestic, agricultural, and manufacturing purposes.—*Ulbricht v. Enfaula Co.*, 86 Ala. 591, 6 South. 78, 4 L. R. A. 572, 11 Am. St. Rep. 72, and authorities there cited. "A riparian proprietor has a right to detain the water of a stream by his dam, so far as is reasonable and necessary for mill or other rightful purposes; but he cannot detain it unreasonably, or divert it, or spread out the water so that it is lost by absorption or evaporation." 8 Am. & Eng. Ency. of Law (2d Ed.) p. 705. "The maintenance of a dam by an upper proprietor, which backs up the water over a large surface, causing a large amount of it to be lost by evaporation and absorption, and preventing any water from flowing down in its natural course to a lower proprietor, is not a reasonable use of such water by such upper proprietor." Farnham on Water and Water Rights, vol. 2. p. 619, § 478; *Barneich v. Mercy*, 136 Cal. 205, 68 Pac. 589. "So it is not a reasonable use of water for a riparian proprietor, who desires to use the water for cattle, to build dams and spread the water out in such manner that it is lost by evaporation and absorption, so as to injure the proprietor below him on the stream," *Ferrea v. Knipe*, 28 Cal. 341, 87 Am. Dec. 128. The trial court did not err in overruling the demurrer to the complaint.

So much of the oral charge as was excepted to was incomplete in its definition of one's liability. It made the defendant liable for the erection or maintaing of the dam, if it worked any injury to the plaintiff, and pretermitted an unreasonable or improper use or waste of the water. The defendant had the right, in this form

of action, to maintain the dam, even to the injury of the plaintiff, if there was a reasonable and proper use of the water. The trial court evidently had in mind, however, the undisputed fact that the water was not, at the time of the injury complained of, being put to a reasonable use, but was retained above, and caused to spread out and evaporate. The charge when applied to the facts in the case, was not, therefore, improper.

There was evidence from which the jury could infer that the defendant caused the erection of the dam, and was maintaining it at the time of the alleged injury to the plaintiff. The trial court did not err in refusing charges 1, 2, 3, and 4, requested by the defendant.

The action of the court in refusing to strike certain claims of damages from the complaint is not reviewable, since the defendant could have objected to proof of same, or charged it out, if not recovable.—*Marx v. Miller,* 134 Ala. 347, 32 South. 765; *Woodstock Co. v. Stockdale,* 143 Ala. 550, 39 South. 335. The amendment of the complaint was permissible, and was within the lis pendens.

In cases like the one at bar the plaintiff can recover nothing but nominal damages, unless he shows affirmatively, that he has suffered some special damage. *Ulbright's Case, supra.* The complaint does not claim any damage to the farm, but that plaintiff has sustained a loss of profits therefrom. The deterioration in the rental value would be a fact that could doubtless be shown to establish depreciation in the value of the farm as well as its rental value; but the complaint seeks to recover only for the loss of profits sustained as the result of the loss of his water supply. The fact that the rental value of the farm was more before than it was after September, 1904, did not tend to establish the averment that the plaintiff had lost any profit from his farm. So

far as the record shows, the plaintiff got as much rent from his farm in 1904 as he did for previous years. He did not rent the farm for less, or reduce the rent, or fail to collect, owing to the reduction of the water supply. The trial court erred in permitting proof of the rental value of the farm, under the particular averment of the complaint, claiming only a loss of profit from the farm, and not damage to its actual or rental value. It is true that the jury did not regard this evidence to its full extent, as their verdict was for less than the amount given by the witness as to the diminution of the rental value, and there was proof of expense to the plaintiff procuring water for his gin, but we are not prepared to say that this evidence did not influence them in awarding damages.

The judgment of the city court is reversed, and the cause is remanded.

Reversed and remanded.

Tyson, C. J., and Haralson and Denson, JJ., concur.